**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTHER R. DAVIS, | CASE NO. CV-F-05-0643 LJO |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 16) |
| vs. | |
| JO ANNE BARNART, Commissioner of Social Security, | |
| Defendant. _____/ | |

Plaintiff Esther R. Davis ("claimant") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an April 24, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on May 4, 2005 and her opening brief on January 27, 2006. The Commissioner filed her opposition to the appeal on March 22, 2006. Claimant did not file a reply brief.

**BACKGROUND**

**Administrative Proceedings**

Claimant filed an application for disability insurance benefits and Supplemental Security Income under the Social Security Act on March 24, 1998. (Administrative Record "AR" 54-57, 317-320.) She

1

alleges a disability onset of March 8, 1997 due to lupus, fibromyalgia, chronic pain, muscle pain, back pain, and joint swelling. (AR 54, 317.)  Claimant's applications for benefits were denied and denied upon reconsideration. Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on December 30, 1999. (AR 13-18.)  The Appeals Council denied review. (AR 9-12.)  Claimant filed for judicial review.

On appeal before this Court, the parties stipulated to remand of the case, and this Court ordered that the Appeals Council instruct the ALJ, inter alia, to evaluate the opinions of each medical source; to evaluate Appellant's subjective complaints and provide rationale; and to develop the record as needed and fully articulate the bases of the decision. (AR 411-412.)

On remand, the Commissioner conducted an additional hearing which resulted in the ALJ issuing an unfavorable decision. (AR 354-365.)  The Appeals Council denied review on March 8, 2005.  (AR 344-346.)  Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on October 9, 1960.  (AR 624.)  Claimant has a high school equivalency. (AR 625.)  Claimant was last employed at an endoscopy technician.  (AR 625.)

## Medical History

The pertinent medical history is summarized as follows.

Claimant was seen at Advanced Pain Medicine clinic from March 1996 to August 1998 (AR 137-164.)  She was diagnosed with fibromyalgia and depression, although her depression improved.  (See e.g., AR 202, 180.)  She complained of pain all over and at times her depression became worse.

In January 1999, she presented to Tomas Rios, M.D. for a comprehensive internal medicine examination.  (AR 165.)  She complained of lupus and fibromyalgia.  (AR 165.)  Claimant reported ability to drive and do limited house work. (AR 165.)  She was not observed to be in acute distress.  (AR 166.)  Upon examination, motor strength was 5/5 in upper and lower extremities and muscle bulk and tone were symmetrical and normal.  (AR 167.)  Dr. Rios functionally assessed claimant, due to arthritis, as having difficulty with activities that require her to perform repetitive push/pull activities, squatting, climbing or crawling and she should not lift more than 30 pounds occasionally and 20 pounds frequently. (AR 168.)

2

1    Claimant was treated by Martin Berry, M.D. from March 1997 to January 1999. (AR 169-202.)
2    She complained of fatigue and pain. (See e.g., AR 195.) Lupus and rheumatoid arthritis tests were
3    negative. (AR 202.) She also complained of depression, which improved and worsened . (See e.g., AR
4    184, 180, 177.)

5    Claimant was seen at Memorial Center for Behavioral Health from April 6, 1998 through March
6    1999 (AR 204-224.) She was psychiatrically assessed on April 6, 1998 by Antonio Perelli-Minetti, M.D.
7    (AR 224.)  She complained of depression which was situational, as she was happy at church, but
8    depressed when she returns to a critical husband. (AR 224.) Dr. Perilli-Minetti assessed claimant with
9    major depression, severe, unstable marriage, and a GAF of 40 to a high of 45. (AR 227.)

10   Marina Vea, M.D. completed a psychiatric review form in March 1999 finding that claimant had
11   affective disorder/major depression. (AR 236.)  Dr. Vea assessed her not significantly limited in
12   understanding, memory sustained concentration and persistence, social interaction or adaption. (AR
13   245-246.)

14   On June 11, 1999, June 25, 1999 and July 30, 1999, claimant had lumbar epidural injections.
15   (AR 261, 263, 264.)  An MRI of the lumbar spine in May 11, 1999 showed minimal spinal stenosis at
16   L5-S1 with mild bilateral foraminal encroachments slightly worse on the left. (AR 298.)

17   On March 10, 2003, claimant presented to the emergency room with a complaint of altered
18   mental status. (AR 451.) She was delirious which was suspected secondary to medications. (AR 452.)

19   On May 2, 2003, claimant had various x-rays due to a fall. (AR 460.) Lumbar spine, right hip
20   and right shoulder were normal. (AR 460.)

21   Claimant saw Emanuel Dozier, M.D. from to December 2000 to July 2003 (AR 470-539.) She
22   complained of body pain, poor sleeping, swelling, depression, among other complaints. (See e.g., 520.)
23   She had been diagnosed with fibromyalgia. (See e.g., AR 520-521.)  On July 24, 2003, claimant
24   completed a medical inventory response indicating that she had trouble sleeping through the night most
25   of the time, is tired for no reason and is irritable most of the time. (AR 470.)

26   An X-ray of the lumbar spine on September 17, 2003 showed a normal lumbosacral spine with
27   no change from May 2, 2003. (AR 541.) A MRI of the lumbar spine on November 6, 2003 showed L5-
28   S1, 2 to 3 mm broad based central annular bulge with associated mild to moderate bilateral facet

3

arthropathy; no evidence of disc herniation or significant neural encroachment; minimal facet arthropathy, L2-3 through L4-5.  (AR 540.)

A cardiac catherization on April 16, 2004 showed no significant coronary artery disease.  (AR 543.)

Progress notes from National Health Service, Inc. from September 2003 to May 2004 show pain management and complains of depression.  (AR 549-575.)  Claimant was seen at Kern County Mental Health from October 2002 through June 2004.  (AR 579-618.)  In her initial evaluation it was noted she was on too many medications.  (AR 618.)  Her disability was noted to be moderate.  (AR 619.)  On May 22, 2003, her mood was depressed, possessed poor insight but intact memory, attention, and orientation.  (AR 612.)  She was referred for supportive therapy and continued on medications.  (AR 612.)  In July 2003, her mood was normal, recommended to continue supportive therapy and continued medications.  (AR 611.)  In September 2003, a progress noted claimant was on too many medications and her disability was noted as moderate.  (AR 608.)  Poor insight, fair judgment, and other indicators of ongoing major depressive disorder with moderate levels of disability continued in the treatment pattern.  AR 612-613, 610-611, 608-609, 605-606 (poor judgment), 603-604 (fair insight and fair memory), 597-598 (fair memory), 585-586 (fair memory and impaired attention and concentration).

A psychiatric progress note on January 7, 2004, Rossano Bangasan, M.D. reported her mood was depressed , she had fair insight, memory and judgment and intact concentration and attention.  (AR 603.)  He opined her disability was moderate and not able to work.  (AR 604.)  Therapy and medications were planned to help her cope with stress of medical problems.  (AR 604.)  Another psychiatric progress note by Dr. Bangasan on March 3, 2004 in which her reported that claimant experienced auditory hallucinations and suicidal, homicidal and paranoid ideation.  (AR 597-598.)  He reported fair response to medications but that she had moderate disability and unable to work.  (AR 598.)

## **Hearing Testimony**

Her past relevant work was an endoscopy technician involved helping the doctor and doing errands.  (AR 626.)  She had to stop working because of pain in her back due to arthritis, calcium build up and fibromyalgia.  (AR 628.)  She testified that these conditions were her main problem.  (AR 628.)  She testified that she also has mental problems with depression and anxiety.  (AR 629.)  She said that

4

given the right medication, her depression and anxiety would not interfere with her working. (AR 629.) The medications she takes now affect her, she gets sleepy. (AR 631.) The doctors have reduced the milligrams of the medications, and that works, but her pain increases. (AR 631.) She has not tried to return to work. (AR 632.) She has trouble sitting or standing for longer than 30 minutes because her low back hurts. (AR 633-634.) She can walk three blocks on an average day. (AR 634.) She has arthritis in her hands. (AR 634.) Her normal position at home is "up and down all day long" doing chores and then she naps. (AR 635.) She has had injections in her back. (AR 638.) She also has stomach problems. (AR 640.) She has been taking antidepressants for years. (AR 643.) She is able to drive if she does not take the narcotic medication. (AR 644.) Her condition is degenerating from the fibromyalgia. (AR 645.)

Vocational Expert ("VE") Kenneth Ferra testified. (AR 646.) The ALJ gave the VE the hypothetical claimant who can lift 20 pounds occasionally and 10 pounds frequently, stand/walk/sit six hours out of eight but has only occasional interaction with the public. (AR 647.) The VE testified that claimant could not do her past relevant work. (AR 647.) The VE testified that she could do other work such as a cleaner occupation or an agricultural sorter. (AR 648.) Adding to the hypothetical that claimant was unable to concentrate 15 minutes out of every hour, the VE testified that there would not be any jobs she could perform. (AR 648.)

**ALJ Findings**

In his December 17, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 357.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 364-365):

1.    The claimant met the disability insured status requirements of the act on March 8, 1997, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since March 8, 1997.

3.    The medical evidence establishes that the claimant suffers from low back pain of unclear etiology, fibromyalgia and depression, but that she does not have an impairment or combination of impairments listed in or medically equal to the one listed in Appendix

1, Subpart P, Regulations No. 4

4.  Claimant's allegations of pain and limitations are not found to be credible for the reason set forth in the body of the decision.

5.  The claimant has the residual functional capacity to perform the physicial exertion and nonexertional requirements of work limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking at least six hours of an eight-hour workday; sitting at least six hours of an eight-hour workday; with infrequent interaction with the public.

6.  The claimant is unable to perform any of her past relevant work as an endoscopy technician and a nurse's aid.

7.  The claimant's residual functional capacity for the full range of light work is reduced by a limitations to infrequent interaction with the public.

8.  The claimant is 44 years old, which is defined as a younger individual.

9.  The claimant has the equivalence of a twelfth grade education.

10.  The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work.

11.  Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 of Regulation No. 4 and 416.969 of Regulations No. 16, and rule 202.19, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12.  Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decision making, there are significant number of jobs in the national economy which she could perform.  Examples of such jobs are: cleaner - 20,000 positions exist within the state economy and 265,000 positions exist nationally; and agricultural sorter – 8,000 positions exist within the state economy and 20,000 exist nationally.

13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

6

**<u>DISCUSSION</u>**

**<u>Standard of Review</u>**

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9ᵗʰ Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9ᵗʰ Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9ᵗʰ Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9ᵗʰ Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9ᵗʰ Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) failed to properly consider the mental evidence, and (2) failed to accurately assess her testimony.

**<u>The Sequential Analysis</u>**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point

7

1  of this review, it is determined that the claimant is not disabled, the claim is not to be considered further.

2  20 C.F.R. §§ 404.1520(a) and 416.920(a).  The five-step process is summarized as follows:

3      1.    Determination of whether the claimant is engaged in substantial gainful activity, and if

4            so engaged, the claimant is not presumed disabled and the analysis ends;

5      2.    If not engaged in substantial gainful activity, determination of whether the claimant has

6            a severe impairment; if the claimant does not, the claimant is not presumed disabled and

7            the analysis ends;

8      3.    If the claimant has a severe impairment, determination of whether any such severe

9            impairment meets any of the impairments listed in the regulations;[1] if the claimant does

10           have such an impairment, the claimant is disabled and the analysis ends;[2]

11     4.    If the claimant's impairment is not listed, determination of whether the impairment

12           prevents the claimant from performing his or her past work;[3] if the impairment does not,

13           the claimant is not presumed disabled and the analysis ends; and

14     5.    If the impairment prevents the claimant from performing his or her past work,

15           determination of whether the claimant can engage in other types of substantial gainful

16           work that exist in the national economy;[4] if the claimant can, the claimant is not disabled

17           and the analysis ends.

18         The claimant has the initial burden of proving the existence of a disability within the meaning

19  of the Act.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  The claimant establishes a prima

20  facie case of disability by showing that a physical or mental impairment prevents him from engaging in

---

22      [1]    *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

23      [2]    If a claimant is found to have an impairment which meets or equals one of the listed impairments, a
24  conclusive presumption of disability applies and the claimant is entitled to benefits.  *See Marcia v. Sullivan*, 900 F.2d 172,
    174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th
25  Cir. 1985.

26      [3]    At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared
    with his or her present capacity.  *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. §
27  416.945(a).

28      [4]    At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and
    vocational factors such as age, education and past work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

1  his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§
2  404.1520(f) and 416.920(f).

3       In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential
4  analysis; that she has not been engaged in substantial gainful employment.

5       At step two, the ALJ must determine if the impairment is severe.  The ALJ determined that the
6  medical evidence establishes claimant suffers from severe impairment. No challenge is made at Step 3.

7  <u>**The ALJ's Finding of Residual Functional Capacity**</u>

8       The Commissioner has final responsibility to determine a claimant's residual functional capacity.
9  20 C.F.R. § 404.1546.  "Residual functional capacity" is the phrase used by the Commissioner to denote
10  a claimant's ability to perform work-related tasks despite his physical or mental impairments.  20 C.F.R.
11  §§ 404.1545(a) and 416.945(a).  Categories of residual functional capacity include sedentary, light,
12  medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567 and 416.967.  In this case, the ALJ found
13  that claimant had the residual functional capacity to perform light work.  Under the applicable
14  regulations, "light work" is defined as follows:

15  
16  
17  
18  
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

19  20 C.F.R. §§ 404.1567(b) and 416.967(b). If someone can do light work, it is determined that he or she
20  can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or
21  inability to sit for long periods of time.  20 C.F.R. §§ 404.1567 and 416.967. Sedentary work involves
22  lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files,
23  ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain
24  amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if
25  walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§
26  404.1567(a) and 416.967(a).

27  <u>**Mental Impairment Evidence**</u>

28       Claimant argues that the ALJ failed to adequately consider the substantial evidence of her mental

impairment and improperly relied upon old state agency decisions.  Claimant argues that the ALJ gave

"short shrift" to more recent treatment records from 1999 through 2003 and that in 1999 she was having

poor response to treatment and moderate disability.  (Opening brief p. 8; AR 206.)

The Ninth Circuit has long held that ALJ does not need to discuss all evidence presented to him.

*Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir.1984). An ALJ need explain why significant and

probative evidence has been rejected.  *Id.*   An example of significant and probative evidence is

uncontroverted medical evidence. *Id.* at 1395. The *Vincent* court found controverted medical evidence

and lay testimony to be neither significant nor probative. *Id.*

The ALJ did indeed review all of the treatment records. The ALJ began the evaluation of

claimant's mental impairment by stating:

> "Regarding her mental functioning, in February 1998, claimant was
> evaluated at mental health.  She was noted to be intelligent, articulate,
> and well oriented with no evidence of a thinking disorder.  Her affect and
> mood were depressed, but her thought content was related to the
> interview at hand.  She had some insight, her judgment appeared to be
> unimpaired, and there was no evidence of suicidality or homicidality.
> Claimant requested assistance to help her deal with some marital issues
> and make some decisions.  The state agency medical consultant found
> claimant's depression stable with medication."  (AR 362) (Evidence
> citations omitted.)

Contrary to claimant's argument, the ALJ reviewed the more recent treatment notes because he

so stated the impact of her self medication, which was noted throughout her treatment:

> "More recent mental health records show claimant had become dependent
> on her pain medication and arrangements were made for claimant for
> inpatient treatment detoxification.  A progress note shows claimant was
> not very treatable due to being overmedicated.  Claimant's medical
> regimen was not effective as over medication had resulted in significant
> concentration and memory problems so that she was not even showing up
> to appointments on time. Claimant was not taking her medications
> appropriately due to increased confusion/concentration problems and as
> a result crating other physical problems."  (AR 359-360) (evidence
> citations omitted.)

The ALJ noted the impact of her extensive medication regime:

> "The medical evidence suggests that claimant eventually became addicted
> to the once described 'high powered narcotics' she used for pain and
> sometimes claimant was noted to also self-treat by using 'her old
> medications' as well.   The record shows in March 2003, claimant
> received emergency room treatment for an altered mental state of unclear

1    etiology, which was thought to be secondary to some of the medication
2    she had been taking." (AR 363) (Evidence citations omitted.)

3   The ALJ also reviewed the treatment records which state she was in therapy:

4    "Claimant was prescribed two antidepressants and she entered into
     supportive therapy to help her cope with stressful situations. In May
5    2004, claimant had reportedly failed to keep appointments with her case
     manager."[5] (AR 360.)
6

7       Claimant points to a mental health treatment note dated March 8, 1999 that states she was having

8  a poor response to medication. The note, however, also questions whether she is over sedated. (AR 206)

9  In addition, the note indicates that her speech is normal, she good eye contact, her mood was depressed,

10 but affect was appropriate, her thought content was fine, and she had coherent relevant and logical

11 thought process. (AR 206.)

12      The ALJ reviewed contemporaneous treatment notes with the March 8, 1999 treatment:

13   "A progress note from Kern County Mental Health dated May 3, 1999
     indicates claimant to be **very** disability minded and somatizing, which
14   might explain her preoccupation with multiple pain symptoms that
     resulted in normal findings." (AR 361) (Emphasis in original.)
15

16      The ALJ relied in part upon the state agency medical review which was also contemporaneous

17 with March 1999. On March 31, 1999, Marina Vea, M.D. completed a psychiatric review form finding

18 that claimant had affective disorder/major depression. (AR 236.) Dr. Vea assessed her not significantly

19 limited in understanding, memory sustained concentration and persistence, social interaction or adaption.

20 (AR 245-246.)  She functionally assessed claimant as able to understand and remember simple job

21 instructions, able to sustain concentration, persistence and pace, and able to relate and interact with

22 others. (AR 363, 247.)  The ALJ noted the treatment records in May 2004 in claimant did not want to

23 pursue treatment until after her daughter's wedding and that was using marijuana and alcohol in addition

24 to her pain medication. (AR 360.)

25      Thus, the evidence before the ALJ indicated that claimant was dependent on her pain medication

26 ───────────────────

27    [5] Claimant argues that the ALJ erroneously states she "missed appointments" as a basis for rejecting her testimony
   (i.e., she sought treatment sporadically).  However, claimant does not dispute that there are, at least, gaps in the treatment
   record.  (Opening brief p.14:7-9.) In addition, the ALJ correctly cited to the record which reported missed treatments.  (AR
28 591, 589.)

1   and that she was not very treatable due to being over medicated; she was not taking her medications as

2   prescribed; she had failed to keep appointments with her case manager; she did not want to pursue

3   treatment until after her daughter's wedding; and she admitted using marijuana and alcohol.  The courts

4   do not have the responsibility for weighing the evidence and resolving conflicts therein, that

5   responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. at 399.

6          Claimant argues that the ALJ failed to state adequate reasons for rejecting Dr. Perelli-Minetti's

7   assessment of a GAF of 40-45.[6]

8          Claimant was referred to Dr. Perelli-Minetti in April 1998 by claimant's treating physician.  (AR

9   224.)  He assessed her with a GAF of 40-45.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

10  ("To the extent that the nontreating physician's opinion rests on objective clinical tests, it must be viewed

11  as substantial evidence.")

12         The ALJ evaluated the opinion and Dr. Perelli-Minetti's objective findings and stated several

13  reasons for rejecting the low GAF:

14                 "Claimant was noted to be neat and clean at the hearing.  Her affect was
                   appropriate and of adequate range."  (AR 363.)
15

16  The ALJ noted that claimant was not found to be suicidal:

17                 "She was not suicidal and although claimant complained of marked
                   anxiety she did not appear to Dr. Perelli-Minetti to be outwardly so
18                 anxious during the interview and did not exhibit the nervous habits she
                   mentioned."
19

20  The ALJ noted that Dr. Perelli-Minetti found that:

21                 "Claimant exhibited no evidence of bizarre thinking, delusions or
                   hallucinations. She was oriented. The sensorium was clear. Intelligence
22                 appeared bright."  (AR 363.)

23  The ALJ concluded that in light of Dr. Perelli-Minetti's objective findings, his conclusion of a low

24  subjective GAF was given little weight. (AR 363.)  In addition, the ALJ compared Dr. Perelli-Minetti's

25  low GAF with a mental treatment note some 3 weeks later which showed claimant was feeling better

26  _____

27         [6] A GAF in the range of 41-50 indicates "serious symptoms (e.g., suicidal ideation, sever obsessional rituals, frequent
    shoplifting or serious impairments in social, occupational or school functions (e.g., no friends, unable to keep a job)."
28  American Psychiatric Assn. Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed. 1994).

and wanted to start job hunting.  (AR 363.)  In rejecting the GAF assessment, the ALJ considered both contemporaneous treatment notes and Dr. Perelli-Minetti's internally inconsistent objective findings with that of his subjective GAF assessment. .  It is for the Commissioner to resolve conflicting evidence. *Sanchez v. Secretary of HHS*, 812 F.2d 509, 511 (9th Cir. 1987); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.).

### Claimant's Testimony

Claimant argues that the ALJ did not accurately set out the facts or assess her credibility.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.  An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

13

1    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

2    (4)    Treatment, other than medication, for relief of pain;

3    (5)    Functional restrictions;

4    (6)    Claimant's daily activities;

5    (7)    Unexplained, or inadequately explained, failure to seek treatment or follow up a

6    prescribed course of treatment; and

7    (8)    Ordinary techniques to test a claimant's credibility.

8    *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

9           The ALJ considered ordinary techniques of credibility in rejecting claimant's full complaints of

10   debilitating pain. First, the ALJ also noted that her complaints were inconsistent with the objective

11   medical evidence. "While claimant alleged lupus as a severe impairment, there is no documentation in

12   the medical evidence to support a diagnosis of such.  In April 2004 claimant complained of chest

13   discomfort that radiated into both arms, the physical examination was within normal limits and the

14   angiography showed no coronary artery disease." (AR 361) (Evidence citations omitted.)  The ALJ

15   turned to other medical evidence, x-rays and MRI, that show normal limits and no herniated discs. (AR

16   361.) She does not have lupus or rheumatoid arthritis, contrary to her claims. (AR 361.)  Examinations

17   did not reveal join pain, swelling stiffness or back or neck pain.  (AR 361.)While subjective pain

18   testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical

19   evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain

20   and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

21          The ALJ also relied on her stated activities of daily living: take care of her personal needs, cook,

22   clean, shop, attend church. (AR 361.)  The ALJ found that her statement of spending most of her day

23   lying down, and needing help with housecleaning and shopping were not credible because her husband

24   is on disability due to herniated discs and back surgeries and she claims he supposedly does everything.

25   (AR 362.)

26          The ALJ also said that the "medical evidence shows claimant has not always been compliant in

27   taking her prescribed medication; e.g., she has taken more than the prescribed dose."  (AR 362)

28   (Evidence citations omitted.) Failure to comply with a treatment program demonstrates lack of a

14

1    disability.  *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (Failure to follow prescribed treatment

2    is a proper basis for rejecting allegations of disabling pain.); 20 CFR 404.1530 (requiring following

3    treatment to be found disabled).

4          The ALJ further found her credibility was impacted by her being "disability minded":

5          "A progress note from kern county mental health dated May 3, 1999
           indicates claimant to be **very** disability minded and somatizing which
6          might explain her preoccupation with multiple pain symptoms that
           resulted in normal findings."  (AR 361) (Evidence citations omitted)
7          (emphasis in original.)

8          The ALJ also found that in spite of claims of debilitating pain which she claimed resulted in

9    minimal activity for a prolonged time, there was no corroborating signs:

10         "Two common side effects of prolonged and/or chronic pervasive pain
           are weight loss and diffuse atrophy.  There is no record of claimant
11         having lost a significant amount of weight since her alleged date of
           disability onset." (AR 362.)

12

13   The ALJ noted she had gained weight, and "there is also no record in any of the clinic notes regarding

14   diffuse atrophy." (AR 362.) In support thereof, the ALJ referred to more recent medical findings that

15   her lumbar spine X-rays remained with normal limits, the lumber spine MRI of May 1999 is normal and

16   an MRI of the spine in May 2003 showed no herniated discs.  (AR 361.)  The ALJ also found relevant

17   "that no treating or attending physician has imposed significant functional limitations upon the claimant

18   since she was released to return to work in April 1998."  (AR 362.)  *See Light v. Social Security*

19   *Administration*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may consider inconsistencies between a

20   claimant's testimony and statement from physicians about the nature, effect, and severity of symptoms.).

21         Here, the ALJ considered multiple factors in discrediting the severity of claimant's pain

22   complaints.  It is not that the ALJ disregarded claimant's claims of pain, it is that the ALJ did not find

23   that the pain claimant suffered eliminated her ability to perform all work.  The ALJ made specific

24   findings as to the lack of credibility as to the extent of claimant's purported pain.  If there is conflicting

25   evidence that will support a finding of either disability or nondisability, the finding of the Commissioner

26   is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  "Credibility determinations

27   are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604.  Accordingly, there is substantial evidence

28   in the record to support the ALJ's partial rejection of claimant's subjective complaints.

1

**CONCLUSION**

2          The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by

3   substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this

4   Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social

5   Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant

6   Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Esther R. Davis.

7   IT IS SO ORDERED.

8   **Dated:    May 8, 2006** _____            _____ **/s/ Lawrence J. O'Neill** _____
    b9ed48                                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16